SARA D'QUAIX, APPELLANT, V.
CHADRON STATE COLLEGE, APPELLEE.

725 N.W.2d 558

Filed January 5, 2007.   No. S-06-548.

Harry R. Meister, of Meister & Segrist, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Tracy L. Warren for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Sara D'Quaix, the claimant in this workers' compensation proceeding, suffered a work-related injury, and her employer

voluntarily paid indemnity benefits. After a trial in the Workers' Compensation Court, D'Quaix was awarded further indemnity benefits. However, the award did not expressly grant her employer credit against the award for the voluntary payments it had already made. The issue presented in this appeal is whether D'Quaix's employer is nonetheless entitled to credit for the voluntary payments it made before the award was entered or whether D'Quaix should receive a waiting-time penalty and attorney fees because her employer did not pay the total amount of the award without crediting itself for voluntary payments.

## BACKGROUND

D'Quaix filed a petition in the compensation court on October 10, 2003, alleging that she had been injured in an accident arising out of and in the course of her employment with Chadron State College (the State). D'Quaix alleged that her employment had required her to work with industrial chemicals and that as a result, she developed allergic contact dermatitis and a hypersensitivity to common household and commercial cleaners. D'Quaix also alleged that the State had notice of the accident and injury on or about November 4, 1997, and that some workers' compensation benefits had been paid as recently as August 8, 2003. However, D'Quaix alleged that the State had not made timely payment of disability benefits and medical expenses, entitling D'Quaix to attorney fees and a statutory penalty pursuant to Neb. Rev. Stat. § 48-125 (Reissue 2004). In response, the State denied liability and alleged that D'Quaix's injuries were the result of a preexisting condition or nonwork accident or illness.

Trial was had, and on October 1, 2004, the single judge of the Workers' Compensation Court awarded benefits to D'Quaix. The parties stipulated that D'Quaix's average weekly wage for purposes of temporary indemnity was $270 and that her monthly salary was $1,205.17. The record also established that before trial, D'Quaix's employer had voluntarily paid $17,841.03 in temporary total disability benefits, $2,340.26 in temporary total disability benefits during vocational rehabilitation, and $10,638 in permanent partial disability benefits, for an overall total of $30,819.29.

The single judge determined D'Quaix had sustained a compensable injury on July 29, 1998, and evidence in the record

indicated D'Quaix had reached maximum medical improvement as of March 2, 2000. Thus, the single judge awarded temporary total disability benefits of $180 per week for the period between July 29, 1998, and March 2, 2000. The single judge further found D'Quaix had suffered a 65-percent loss of earning capacity, entitling her to permanent partial disability benefits of $120.52 per week for 217 weeks. In sum, the single judge awarded D'Quaix disability benefits totaling $39,370.24. The October 1, 2004, award did not give the State credit for payments already made and was silent as to a penalty or attorney fees. No one appealed from the October 1 award.

The State issued a check to D'Quaix on October 29, 2004, in the amount of $12,052. No other payments were made after the entry of the October 1 award. In a letter dated January 13, 2005, D'Quaix demanded an additional payment of $40,977.36, on the basis that $27,318.24 remained due on the October 1, 2004, award, and an additional $13,659.12 had accrued as a waiting-time penalty. On June 20, 2005, D'Quaix filed a motion in the compensation court seeking a waiting-time penalty and attorney fees.

A hearing was held before the single judge on July 7, 2005. Over D'Quaix's objection, the State adduced evidence that prior to the October 1, 2004, award, D'Quaix had been paid 112½ weeks of temporary total disability benefits at a rate of $180 per week, for a total of $20,186.29, and 88⅔ weeks of permanent partial disability benefits at a rate of $120.50 per week, for a total of $10,638. We note that although the evidence presented at trial and at the postaward hearing is in substantial agreement, there is a $5 discrepancy in the amount of temporary total disability benefits that is not explained by the record. This discrepancy is not significant to our analysis.

The State contended that when the postaward payment of $12,052 was included, D'Quaix had actually received $1,753.25 *more* than she had been awarded by the October 1, 2004, award. D'Quaix did not dispute that the payments evidenced by the State had been made, but argued that the evidence was "a collateral attack on that final judgment and is inadmissible."

The single judge overruled D'Quaix's objection and her motion for a waiting-time penalty and attorney fees. The single judge

acknowledged that the October 1, 2004, award "did not provide that [the State] was entitled to credit for indemnity paid, as is the practice of the Court when the evidence established past voluntary payments of indemnity by the employer or its insurer." However, the single judge found that the preaward indemnity payments had been made as claimed by the State, and because no indemnity remained unpaid 30 days after the entry of the award, D'Quaix "is therefore not entitled to what would be a double recovery, plus a waiting time payment and attorney's fee."

D'Quaix appealed, and the review panel of the Workers' Compensation Court affirmed the decision of the single judge. D'Quaix again appealed, and we moved the case to our docket on our own motion pursuant to our statutory authority to regulate the dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

D'Quaix assigns, consolidated and restated, that the Workers' Compensation Court erred in (1) failing to award a waiting-time penalty, attorney fees, and interest on the October 1, 2004, award when the award did not provide that the State was entitled to credit for benefits already paid; (2) revisiting evidence previously received by the court in drafting the October 1 award; and (3) accepting evidence at the postaward hearing that collaterally attacked the October 1 award.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Ortiz v. Cement Products*, 270 Neb. 787, 708 N.W.2d 610 (2005).

## ANALYSIS

Section 48-125(1) provides, in relevant part, that

all amounts of compensation payable under the Nebraska Workers' Compensation Act shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death, except that fifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability or after thirty days from the entry of a final order, award, or judgment of the compensation court.

Section 48-125(2) further provides for attorney fees to be awarded when an employer refuses to pay compensation and proceedings are held before the Workers' Compensation Court. D'Quaix argues that she was entitled to a waiting-time penalty and attorney fees because, according to D'Quaix, the entire amount of the October 1, 2004, award was not paid within 30 days from the entry of the award. The State disagrees, arguing that the award was paid within 30 days because a substantial part of the ultimate award was paid, voluntarily, before it was entered.

All of D'Quaix's assignments of error rest on the same premise: The failure of the October 1, 2004, award to set off a credit against the judgment, for benefits already paid, operated to deny such a credit. Therefore, the underlying issue presented in this appeal is whether the State is entitled to credit for the voluntary payments it made before the award was entered.

D'Quaix presents little in the way of authority to support her contention that the October 1, 2004, award represents a denial of credit for previously made payments. As a general matter, where an order is clearly intended to serve as a final adjudication of the rights and liabilities of the parties, the silence of the order on requests for relief not spoken to can be construed as a denial of those requests under the circumstances. See *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005). But in this case, there is no indication that the trial court was asked to decide the extent to which the State was entitled to a credit. A request for relief cannot be implicitly denied if it was never made in the first place.

D'Quaix argues that the issue was before the single judge because the State presented evidence, before the October 1, 2004, award was entered, of payments it had voluntarily made. But D'Quaix's petition sought attorney fees and a waiting-time penalty on the basis that the State had allegedly not made payments after being notified of D'Quaix's injury. See § 48-125(1). The State's evidence of voluntary payment was relevant to its denial of that allegation. Adducing that evidence did not amount to asking the single judge to decide whether the State was entitled to a credit against the award for those payments.

■ Nor is there any requirement in the Nebraska Workers' Compensation Act, see Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 2004 & Cum. Supp. 2006), that a credit against an award for payments already made be determined by the court. In an ordinary civil action, for instance, "the matter of any credit to be deducted from a judgment shall be determined by the court in a separate hearing or upon the stipulation of the parties." Neb. Rev. Stat. § 25-1222.01 (Reissue 1995). But the workers' compensation statutes contain no comparable provision. As the single judge acknowledged here, it is certainly better practice when the credit for voluntary payments is addressed in the award. But where the court, by oversight, fails to give credit for the amount already paid, the defendant is still entitled to receive credit. See *Rapp v. Hale*, 170 Neb. 620, 103 N.W.2d 851 (1960), *overruled on other grounds, Gifford v. Ag Lime, Sand & Gravel Co.*, 187 Neb. 57, 187 N.W.2d 285 (1971).

■ In this case, the single judge's award was clearly intended to provide D'Quaix with all the compensation to which she was entitled under the Nebraska Workers' Compensation Act. As a general rule, a party may not have double recovery for a single injury. See *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998). There was no requirement, in the Nebraska Workers' Compensation Act or the October 1, 2004, award, that the State provide D'Quaix with a double recovery. Instead, the State properly acted to voluntarily pay D'Quaix indemnity benefits after being notified of her injury and paid D'Quaix the balance of her award after the award was entered. The record establishes, beyond dispute, that D'Quaix received all of the indemnity benefits she was awarded in the October 1 award.

Because the State paid the balance of the October 1, 2004, award within 30 days after it was entered, the Workers' Compensation Court did not err in denying D'Quaix's motion for a waiting-time penalty and attorney fees. Similarly, the evidence adduced at the hearing on D'Quaix's motion was not a collateral attack on the October 1 award because the issue raised at the hearing had not been decided by the previous award, and the single judge did not err in accepting the State's evidence. D'Quaix's assignments of error are without merit.

## CONCLUSION

The single judge's October 1, 2004, award did not deny the State a credit for payments it had voluntarily made prior to the award. The State was entitled to credit for the voluntary payments it made before the award was entered, and the Workers' Compensation Court did not err in admitting the State's evidence and denying D'Quaix's motion for a waiting-time penalty and attorney fees. The order of the Workers' Compensation Court is affirmed.

AFFIRMED.